ROBERT V. AND LOYCE H. PANOS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Panos v. Commissioner
Docket No. 2844-91
United States Tax Court
T.C. Memo 1992-474; 1992 Tax Ct. Memo LEXIS 494; 64 T.C.M. (CCH) 542; 15 Employee Benefits Cas. (BNA) 2454; August 19, 1992, Filed *494 Decision will be entered for respondent. For Robert V. Panos, pro se. For Respondent: Cathy A. Goodson. BUCKLEY
BUCKLEY
MEMORANDUM OPINION BUCKLEY, Special Trial Judge: This case was assigned pursuant to the provisions of section 7443A(b)(3) [1] and Rules 180, 181 and 182. Respondent determined a deficiency in petitioners' 1987 Federal income tax in the amount of $ 8,274. The sole issue is whether petitioners are liable for the 10-percent additional tax for Robert Panos' withdrawal from a qualified voluntary investment plan. The bulk of the relevant facts have been stipulated, and they are so found. Petitioners resided at Bellevue, Washington, when they timely filed their petition herein. Petitioner Robert Panos worked for the Boeing Company. Future references to petitioner are to Robert Panos. He was laid off by Boeing on September 6, 1986. Shortly *495 thereafter, on September 30, 1986, petitioner elected to defer distribution of his retirement benefits, under the Boeing Voluntary Investment Plan, hereafter the VIP, until September of 1987. Petitioner's election was irrevocable. The VIP was a qualified retirement plan. The reason petitioner delayed the withdrawal of the funds was that he hoped to be rehired by Boeing. Had that happened, he would have continued as a member of the VIP. If instead, he had received the funds, upon rehiring he would have been required to wait 6 months before being eligible for the VIP. Petitioner was not rehired by Boeing, and with the exception of 3 months of employment, petitioner has been unemployed since September of 1986 to the date of trial herein. The VIP funds, totaling $ 82,740, were disbursed to petitioner in September of 1987. Petitioners reported the distribution on their 1987 income tax return, on Form 4972, claiming the special 10-year averaging method. Respondent does not question the propriety of such averaging method but has determined that petitioner is liable for an additional 10-percent tax on the September 1987 distribution because petitioner did not fit within any of the *496 exceptions in section 72(t)(2). Petitioner does not contend he falls within any of these exceptions. At the time petitioner made his irrevocable election to leave the VIP funds in the Boeing account, he was not aware that section 72(t) was being considered by Congress. Had he been aware of the provisions of section 72(t), he would have withdrawn his VIP funds upon his separation from service at Boeing, rather than leave them on deposit. Section 72(t)(1) provides that if "any taxpayer receives any amount from a qualified retirement plan * * * the taxpayer's tax * * * shall be increased by an amount equal to 10 percent of the portion of such amount which is includible in gross income." There are several exceptions to section 72(t)(1), none of which are applicable to petitioner. Sec. 72(t)(2). However, in passing section 72(t), Congress provided for certain transitional rules which petitioner argues should be made available to him. Section 72(t) was enacted on October 22, 1986, and was effective for taxable years beginning after December 31, 1986. This was prior to the September 30, 1987, distribution to petitioner. The transitional rules, however, provide that the 10-percent *497 additional tax can be avoided by employees who met the following conditions: If an employee separates from service during 1986 and receives a lump sum distribution * * * after December 31, 1986, and before March 16, 1987, on account of such separation from service, then, for purposes of the Internal Revenue Code of 1986, such employee may elect to treat such lump sum distribution as if it were received when such employee separated from service. Tax Reform Act of 1986, Pub. L. 99-514, sec. 1124(a), 100 Stat. 2085, 2475. Petitioners are unwitting victims of the chronology inherent in this case. Thus, at the time petitioner chose to defer receipt of the VIP funds on September 30, 1986, section 72(t) had not yet been enacted. The transitional rules were enacted specifically to allow separated employees such as petitioner the opportunity to avoid the tax impact of section 72(t) by treating distributions received after December 31, 1986, and before March 16, 1987, as if received when such employee separated from employment in 1986. However, by that time petitioner had already irrevocably committed his VIP funds to remain with Boeing until September 30, 1987. He thus fell outside *498 the fail-safe period Congress allowed certain employees to avoid the additional 10-percent tax of section 72(t). We sympathize with petitioner's plight. However, we are not a court of equity, and we cannot extend the time period Congress explicitly set forth in the transitional rules as an exception to section 72(t). It is a long-established principle that "exemptions from taxation are not to be implied; they must be unambiguously proved." ; (holding that exemptions from taxation do not rest upon implication). The Court of Appeals for the D.C. Circuit has recently affirmed this Court on the principle "that a 'claim for exemption must rest upon language in regard to which there can be no doubt as to its meaning, and that the exemption must be granted in terms too plain to be mistaken'." (quoting , affg. . Respondent's determination *499 of an additional 10-percent tax deficiency is correct. A few brief words about another contention of petitioner. He argues that respondent is somehow at fault by not advising petitioner at an earlier date of the impact of section 72(t) and the consequent excise tax. Petitioner argues that had he been so advised, he would have amended his 1986 income tax return and reported the distribution in that year. Petitioner's view of the law is mistaken, however. Aside of the fact that respondent bears no such advice obligation, the fail-safe provisions of section 72(t) apply to the date the distribution is actually made, not to the time in which it is reported (mistakenly) on an income tax return. Petitioner received these funds in 1987 (not before March 16, 1987), and that is the year in which he, a cash basis taxpayer, must report the distribution. Decision will be entered for respondent. Footnotes
1. Section references are to the Internal Revenue Code in effect for the year at issue; Rule references are to the Tax Court Rules of Practice and Procedure.↩